**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JULIUS DAVID BOURKE,**<br>   **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-5347** |
| **EXXON MOBIL CORPORATION,**<br>**ET AL.,**<br>   **Defendants** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is Plaintiff Julius David Bourke's motion to remand this matter to state court.[1] Defendants Exxon Mobil Corporation ("Exxon") and Georgia-Pacific, LLC ("Georgia-Pacific"), oppose the motion. The Court has considered the briefs, the record, and the applicable law and now issues its ruling. For the reasons that follow, the motion to remand is **GRANTED**.

## FACTUAL BACKGROUND

On August 25, 2015, Plaintiff Julius David Bourke ("Plaintiff") filed a Petition for Damages against a handful of Defendants in the Civil District Court for the Parish of Orleans, State of Louisiana.[2] Plaintiff's claims arise out of his allegedly "substantial exposure to asbestos and asbestos-containing products" which were either "sold, distributed, applied, removed, used, manipulated, and/or maintained" in various locations by the Defendants.[3] According to the Plaintiff, he was exposed to asbestos from around 1953 through the 1970s.[4] More specifically, Plaintiff contends that, from his birth in 1953 through 1960, he was "repeatedly exposed to asbestos" as a child from his "father's person and work clothes," when his father worked "with and around asbestos-containing

---

[1] R. Doc. 15.
[2] R. Doc. 1-2 at 1.
[3] R. Doc. 1-2 at 1.
[4] R. Doc. 15-1 at 7.

products at the Exxon Baton Rouge facilities."[5] Then, as an adult, Plaintiff contends he

was repeatedly exposed to asbestos from approximately 1965 through 1978 while working

as a carpenter at "various residential construction sites" and as a contractor "at the Exxon

Baton Rouge Refinery."[6]

Named as Defendants in Plaintiff's state-court petition were: (1) Eagle, Inc.; (2)

Georgia-Pacific, LLC; (3) Exxon Mobil Corporation; (4) Taylor-Seidenbach, Inc.; and (5)

Union Carbide Corporation.[7] According to the Plaintiff, Defendants Eagle, Inc.; Georgia-

Pacific, LLC; Taylor-Seidenbach, Inc.; and Union Carbide Corporation each "designed,

tested, evaluated, manufactured, packaged, furnished, stored, handled, transported,

installed, supplied and/or sold [the] asbestos-containing products" to which the Plaintiff

was exposed.[8] Plaintiff alleges Defendant Exxon Mobil Corporation used asbestos-

containing products at its Baton Rouge facility, where both the Plaintiff and the Plaintiff's

father worked, resulting in Plaintiff's exposure to asbestos during certain periods over the

course of his lifetime.[9]

## PROCEDURAL & JURISDICTIONAL BACKGROUND

Exxon, with the consent of Defendants Georgia-Pacific and Union Carbide,

removed Plaintiff's suit to federal court on October 21, 2015.[10] The basis of this Court's

jurisdiction is alleged to be diversity of citizenship.[11] According to the Notice of Removal,

Plaintiff is a natural person and a citizen of the State of Louisiana.[12] Defendants Exxon

---

[5] R. Doc. 15-1 at 8.
[6] R. Doc. 15-1 at 8.
[7] *See* R. Doc. 1-2 at 28.
[8] R. Doc. 1-2 at 3. The Plaintiff further contends that "[e]ach of the foregoing asbestos-containing products was used at Plaintiff's jobsites." R. Doc. 1-2 at 3.
[9] *See* R. Doc. 1-2 at 2, 23.
[10] *See generally* R. Doc. 1. Exxon did not obtain the consent of Taylor-Seidenbach, Inc., or Eagle, Inc., as Exxon contends those Defendants were improperly joined to defeat federal diversity jurisdiction, such that their consent to removal was not needed. *See* R. Doc. 1 at 9.
[11] R. Doc. 1 at 1 (citing 28 U.S.C. §§ 1332, 1441).
[12] R. Doc. 1 at 3.

Mobil and Union Carbide are corporations. To properly allege the citizenship of a corporation, the Notice of Removal must allege both the corporation's state of incorporation and its principal place of business.[13] The Notice of Removal states that Exxon is a "Delaware corporation with its principal place of business in Texas," and Defendant Union Carbide Corporation is a "New York corporation having its principal place of business in Texas."[14] As such, Exxon is a citizen of Delaware and Texas, while Union Carbide is a citizen of New York and Texas.

Defendant Georgia-Pacific, on the other hand, is a limited liability company. The citizenship of a limited liability company is determined by the citizenships of all of its members.[15] If one of its members is an LLC or a partnership, the citizenships of that entity's members or partners must continue to be traced until an individual and/or a corporation is reached.[16] Georgia-Pacific, LLC, is wholly owned by Georgia-Pacific Holdings, LLC, which is in turn wholly owned by Georgia-Pacific Entity Holdings, LLC.[17] Georgia-Pacific Entity Holdings, LLC, is wholly owned by Koch Renewable Natural Resources, Inc., a "Delaware corporation with its principal place of business in Kansas."[18] Georgia-Pacific is, as a result, a citizen of Delaware and Kansas.

It is undisputed that the Plaintiff, a citizen of Louisiana, is completely diverse from each of the aforementioned Defendants. It is also undisputed, however, that the Plaintiff is *not* diverse from the two remaining Defendants: Taylor-Seidenbach, Inc., and Eagle, Inc. Both Taylor-Seidenbach and Eagle are, as alleged in the Plaintiff's state-court petition, domestic corporations with their registered offices located in Orleans Parish,

---

[13] *See, e.g., Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 706 F.2d 633, 637 (5th Cir. 1983).
[14] R. Doc. 1 at 3.
[15] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080–81 (5th Cir. 2008).
[16] *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009).
[17] R. Doc. 1 at 3.
[18] R. Doc. 1 at 3.

Louisiana.[19] Thus, Taylor Seidenbach and Eagle are citizens of the State of Louisiana.[20] Because Plaintiff is also a citizen of Louisiana, complete diversity does not exist between the Plaintiff and Defendants Taylor-Seidenbach, Inc., and Eagle, Inc.

In removing this matter to federal court, Exxon argued that Taylor-Seidenbach and Eagle were improperly joined as Defendants to defeat federal diversity jurisdiction.[21] Exxon, in the Notice of Removal, contended "Taylor Seidenbach, Inc. and Eagle, Inc. are improperly joined defendants because there exists 'no reasonable basis for predicting' that plaintiff will recover against th[ese] purported defendants in state court."[22] Exxon further argued in support of removal that the Plaintiff has "no intent" to prosecute his action against Taylor-Seidenbach, Inc., and Eagle, Inc., at trial.[23] For those reasons, Exxon maintains Taylor-Seidenbach and Eagle are improperly joined defendants and, as a result, that federal diversity jurisdiction is proper before this Court.

Plaintiff filed the instant motion to remand on November 20, 2015. Plaintiff argues he properly pleaded causes of action against Taylor-Seidenbach, a non-diverse defendant, under Louisiana law, such that complete diversity of citizenship does not exist between the Plaintiff and all of the Defendants.[24] The Plaintiff does not, however, address his claims against Eagle, Inc., or whether Eagle is a properly joined defendant to this action. It is of particular note that, on September 22, 2015, after suit was filed but prior to the removal of this matter to federal court, Eagle filed a Chapter 11 petition for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Louisiana.[25]

---

[19] R. Doc. 1-2 at 2. The Louisiana Secretary of State's website reflects that the principal place of business for both defendants is in New Orleans, Louisiana.
[20] R. Doc. 1-2 at 2.
[21] R. Doc. 1 at 4.
[22] R. Doc. 1 at 4 (citing *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004); *Mumphrey v. CVS Pharmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013)).
[23] R. Doc. 1 at 5.
[24] R. Doc. 15-1 at 8.
[25] R. Doc. 1 at 4.

As such, all claims asserted against Eagle became subject to an automatic stay on September 22, 2015.[26] The Defendants contend Eagle is, as a result, a non-party for purposes of determining whether federal diversity jurisdiction is present, due to the automatic stay to which Eagle is subject.[27]

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the United States Constitution or by Congress.[28] Federal law allows for state civil suits to be removed to federal courts in certain instances.[29] Generally, removal jurisdiction is governed by 28 U.S.C. § 1441(a), which provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.[30]

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."[31] When removal is based on federal diversity jurisdiction, the removing party must show that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000.[32] "The jurisdictional facts supporting removal are examined as of the time of removal."[33] "Ambiguities are construed against removal and in favor of remand because removal statutes are to be strictly construed."[34]

---

[26] R. Doc. 1 at 4; R. Doc. 15-1 at 8 n.1. *See also* 11 U.S.C. § 362.

[27] R. Doc. 1 at 4. *See also* R. Doc. 15-1 at 8 n.1.

[28] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[29] *See* 28 U.S.C. § 1441.

[30] 28 U.S.C. § 1441(a).

[31] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[32] *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

[33] *Poche v. Eagle, Inc.*, No. 15-5436, 2015 WL 7015575, at *2 (E.D. La. Nov. 10, 2015) (citing *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)).

[34] *Poche*, 2015 WL 7015575, at *2 (citing *Manguno*, 276 F.3d at 723).

Whether the parties are completely diverse is the only jurisdictional issue before the Court at the present time.[35] Complete diversity of citizenship requires each plaintiff to be a citizen of a different state from each defendant.[36] "[I]n diversity cases, a single non-diverse party destroys original jurisdiction with respect to all claims in the action."[37] "An exception to the rule of complete diversity applies when a non-diverse defendant is improperly joined in order to defeat the court's diversity jurisdiction."[38] The Fifth Circuit has recognized two ways for the removing party to establish improper, or fraudulent, joinder: (1) "actual fraud in the pleading of jurisdictional facts;" or (2) an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[39] There is no allegation of actual fraud in this case. "The test for improper joinder where there is no allegation of actual fraud is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant."[40]

The removing party's burden of proving improper joinder is "heavy."[41] "In determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor."[42] In *Smallwood v. Illinois Central*

---

[35] The parties agree, and the Court finds, the amount-in-controversy requirement is satisfied. Plaintiff alleges he contracted "malignant mesothelioma," which is an "incurable terminal cancer," as a result of his exposure to asbestos. R. Doc. 1 at 8. It is facially apparent that the amount-in-controversy exceeds $75,000.
[36] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "Complete diversity 'requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'" *Id.* (quoting *McLaughlin*, 376 F.3d at 353)).
[37] *Lundquist v. J&J Exterminating, Inc.*, No. 07-CV-1994, 2008 WL 1968339, at *2 (W.D. La. May 2, 2008) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005)).
[38] *Id.*
[39] *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).
[40] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (E.D. La. Oct. 7, 2014) (citing *Smallwood*, 385 F.3d a 573).
[41] *Lundquist*, 2008 WL 1968339, at *2 (quoting *Smallwood*, 385 F.3d at 574).
[42] *Rodrigue*, 2014 WL 4999465, at *2 (citing *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).

*Railroad Co.*, the Fifth Circuit articulated two avenues for determining whether a plaintiff has a reasonable basis for recovery under state law.[43] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[44] "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[45] Second, if the plaintiff has stated a claim and, as a result, survives a Rule 12(b)(6) challenge, but "misstated or omitted discrete facts that would determine the propriety of joinder," the court may "pierce the pleadings and conduct a summary inquiry."[46] "[A]lthough the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard."[47] "The district court must also take into account 'the status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant."[48]

## DISCUSSION

Exxon, as the removing party, bears the burden of showing that federal jurisdiction exists and that removal was proper.[49] In this case, to show that federal jurisdiction exists, Exxon bears the "heavy" burden of showing that the Plaintiff improperly joined a non-diverse defendant, or defendants, in order to defeat this Court's diversity jurisdiction.[50] The Court finds that Exxon has failed to meet that burden and, for the following reasons,

---

[43] *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). *See also Rodrigue*, 2014 WL 4999465, at *2.
[44] *Smallwood*, 385 F.3d at 573.
[45] *Id.*
[46] *Id.*
[47] *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).
[48] *Id.*
[49] *Lundquist*, 2008 WL 1968339, at *2 (quoting *Smallwood*, 385 F.3d at 574).
[50] *Id.* (quoting *Smallwood*, 385 F.3d at 574).

grants the Plaintiff's motion to remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana.

## I.   EAGLE, INC.

### A.  Eagle's Bankruptcy

The Court first addresses whether, in light of Eagle's bankruptcy, Eagle's citizenship need be considered for purposes of assessing federal diversity jurisdiction in this case. Eagle, a domestic corporation with its registered office and principal place of business in Orleans Parish, is a citizen of the State of Louisiana.[51] The Plaintiff is also a citizen of Louisiana.[52] Plaintiff and Eagle are, as a result, not diverse.

As explained above, Eagle filed a petition for voluntary bankruptcy protection on September 22, 2015.[53] Due to Eagle's bankruptcy filing, all claims asserted against Eagle are subject to an automatic stay.[54] Both parties contend that, due to the stay, Eagle is a "non-defendant in this action" whose citizenship should not be considered for purposes of determining the propriety of this Court's jurisdiction.[55] Neither party, however, cites any authority to support that position—*i.e.*, that when a party files for bankruptcy protection and all claims asserted against it are automatically stayed, that party is rendered a non-factor for purposes of assessing federal subject-matter jurisdiction. In fact, the Court has come to the opposite conclusion.

In *Poche v. Eagle, Inc.*, a court in this district recently addressed this very issue— that is, the effect of Eagle's automatic bankruptcy stay on the consideration of its citizenship for purposes of federal diversity jurisdiction.[56] In *Poche*, the court began with

---

[51] R. Doc. 1-2 at 2.
[52] R. Doc. 1 at 3.
[53] R. Doc. 1 at 4; R. Doc. 15-1 at 8 n.1.
[54] R. Doc. 1 at 4; R. Doc. 15-1 at 8 n.1. *See also* 11 U.S.C. § 362.
[55] R. Doc. 1 at 4; R. Doc. 15-1 at 8 n.1; R. Doc. 20 at 10.
[56] *See generally Poche v. Eagle, Inc.*, No. 15-5436, 2015 WL 7015575, at *4 (E.D. La. Nov. 10, 2015).

the general premise that "[a] case that is initially nonremovable may become removable through the voluntary dismissal of nondiverse defendants."[57] All but one of the defendants—Eagle, Inc.—had been voluntarily dismissed at the time of the removal.[58] "Thus, the propriety of removal turn[ed] on Eagle's status at the time of the removal."[59]

In *Poche*, it was undisputed that the plaintiff and Eagle were both citizens of the State of Louisiana, which ordinarily would defeat federal diversity jurisdiction.[60] Nevertheless, the removing party in *Poche* argued, in support of removal, that "Eagle's citizenship is irrelevant because Eagle was a nominal party at the time of the removal due to the automatic stay issued by the bankruptcy court."[61] The court disagreed, drawing a distinction based on the timing of the automatic stay in relation to the initial filing of the state-court lawsuit. The court ruled, based on a review of other similar district court cases, that "removal is improper when the action against a nondiverse defendant is automatically stayed *after* the plaintiff files suit in state court," but "removal is proper if [the] bankruptcy court stays all actions against the nondiverse party *before* the plaintiff files suit."[62] Moreover, the *Poche* court noted that "the automatic stay did not result in a certain, voluntary dismissal of Eagle," as an automatic stay is "merely a temporary suspension of the proceedings."[63] The court held: "Because Plaintiffs did not voluntarily dismiss Eagle, its citizenship is still relevant for determining whether diversity jurisdiction exists."[64]

---

[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.* (citing *Reichley v. Abercrombie & Fitch Stores, Inc.*, No. 09-838, 2009 WL 5196140, at *2 (W.D. Mich. Dec. 22, 2009); *Sutton Woodworking Mach. Co., Inc. v. Mereen-Johnson Mach. Co.*, 328 F. Supp. 2d 601, 607 M.D.N.C. 2004)).
[63] *Id.* (citing *Reichley*, 2009 WL 5196140, at *2; *Sutton Woodworking*, 328 F. Supp. 2d at 605).
[64] *Id.*

The *Poche* decision is highly analogous to the instant case, and the Court finds the decision in *Poche* to be well-reasoned and persuasive. In this case, as in *Poche*, Eagle did not initiate its bankruptcy proceedings and become subject to the automatic stay until *after* the Plaintiff had filed his lawsuit in state court. Specifically, Plaintiff filed his state-court petition on August 25, 2015,[65] and Eagle filed for voluntary bankruptcy protection on September 22, 2015.[66] Moreover, the Plaintiff in the instant case, as in *Poche*, has not voluntarily dismissed Eagle as a defendant. Because Eagle's citizenship is relevant to the determination of whether diversity jurisdiction exists, the Court must analyze whether Eagle was improperly joined to determine whether diversity jurisdiction exists.

### B.  Improper Joinder

Exxon contends, in the Notice of Removal, that Eagle was "improperly joined" to "frustrate or prevent defendants from exercising their rights of removal and the availability of a federal forum for this dispute."[67] According to Exxon, "there is no reasonable basis for predicting that plaintiff will be able to recover against . . . Eagle, Inc. in state court."[68]

In assessing Plaintiff's claims against Eagle, the Court looks initially to Plaintiff's state-court petition and the allegations contained therein to determine whether Plaintiff has stated a viable claim. Having reviewed Plaintiff's bare-bone allegations against Eagle, the Court finds no reasonable basis for predicting that Plaintiff will be able to recover from Eagle. Plaintiff merely alleges he "was exposed to products, distributed and installed" by Eagle and that those "products, in combination with other asbestos-

---

[65] R. Doc. 1-2 at 1. *See also* R. Doc. 1 at 2.
[66] *See* R. Doc. 1 at 4; R. Doc. 15-1 at 8 n.1.
[67] R. Doc. 1 at 6.
[68] R. Doc. 1 at 5.

containing products, caused his asbestos-related injuries."[69] Plaintiff's state-court petition provides no further detail on how Eagle may be liable to him for the damages he alleges. These conclusory allegations, by themselves, are not sufficient to withstand the Rule 12(b)(6)-type inquiry which is appropriate at this stage.

Although when conducting a Rule 12(b)(6)-type inquiry the court generally "must limit itself to the contents of the pleadings, including attachments thereto,"[70] the court also may consider documents attached to a motion or an opposition "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[71] Plaintiff has not referred the Court to any documents or attachments to pleadings establishing a reasonable basis for predicting that he may be entitled to recover from Eagle. The Court is left with its conclusion that Plaintiff has not stated a viable claim for relief against Eagle and that Eagle was improperly joined as a defendant in this matter. "A finding of improper joinder is tantamount to dismissal of the defendant who was improperly joined."[72] Accordingly, all claims asserted against Eagle are dismissed, and Eagle is not considered for purposes of determining federal jurisdiction in this action.

## II.   TAYLOR-SEIDENBACH, INC.

Having found that Eagle's citizenship does not defeat diversity, the Court must consider whether Taylor-Seidenbach's joinder does. Taylor-Seidenbach, a domestic corporation with its registered office and principal place of business in Orleans Parish, is

---

[69] R. Doc. 1-2 at 2.

[70] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[71] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). *See also U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[72] *Butler v. La. State. Univ. Health Sciences Ctr.*, No. 12-CV-1838, 2012 WL 7784402, at *4 (W.D. La. Nov. 19, 2012) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir. 1990)).

a Louisiana citizen.[73] Because Taylor-Seidenbach and the Plaintiff are both citizens of Louisiana, they are not diverse, and federal diversity jurisdiction is not present on the face of the pleadings. Defendant Exxon alleges Taylor-Seidenbach was improperly joined as a defendant in this action to defeat federal diversity jurisdiction.

    A.  <u>Rule 12(b)(6)-Type Analysis</u>

In assessing Exxon's improper-joinder allegations, the Court must determine whether the Plaintiff has a reasonable basis for recovery against Taylor-Seidenbach under state law. As noted above, under Fifth Circuit case law, the Court first engages in a Rule 12(b)(6) analysis and evaluates whether Plaintiff has stated a claim upon which relief can be granted under Louisiana law against Taylor-Seidenbach.[74] As with Defendant Eagle, Plaintiff alleges he "was exposed to products, distributed and installed" by Taylor-Seidenbach. "Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos related injuries."[75] The Court finds that these allegations, without more, do not withstand a Rule 12(b)(6)-type inquiry, as they lack sufficient detail to show that the Plaintiff has a reasonable basis for recovering against Taylor-Seidenbach under Louisiana state law.

"A claim against a company that allegedly sold, manufactured, [or] distributed asbestos, as well as contracted to perform activities at a plaintiff's workplace[,] is valid under Louisiana law."[76] "To prevail in an asbestos case in Louisiana, a plaintiff must establish by a preponderance of the evidence that (1) the clamant was exposed to asbestos from the defendant's product and (2) the exposure substantially caused the claimant's

---

[73] R. Doc. 1-2 at 2.

[74] *Smallwood*, 385 F.3d at 573.

[75] R. Doc. 1-2 at 2. "Exhibit A" is an attachment to Plaintiff's state-court petition and is on the record at Record Document 1-2, at page 23.

[76] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *3 (E.D. La. Oct. 7, 2014) (citing *Richoux v. CSR Limited*, No. 08-931, 2008 WL 576242 (E.D. La. Feb. 29, 2008)).

injury."[77] The Plaintiff alleges Taylor-Seidenbach "distributed and installed" certain "asbestos-containing products," which were put to use at a number of Plaintiff's work sites.[78] As noted above, in conducting a Rule 12(b)(6) analysis, the court may consider documents attached to a motion or an opposition "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[79] Unlike the situation with Eagle, the Plaintiff has attached documents to his motion to remand further supporting his claims against Taylor-Seidenbach.

### 1.  *Deposition of Ralph Shepard*

Plaintiff attached and referred to the deposition of Ralph Shepard in his motion to remand.[80] Shepard, Taylor-Seidenbach's corporate representative, testified in his deposition that Taylor-Seidenbach sold and installed insulation, siding, and roofing in Louisiana from approximately 1946 through 1976.[81] Shepard listed several asbestos-containing products that Taylor-Seidenbach sold, distributed, and installed during that time period, including Asbestone siding, Johns Manville flat transite, Johns Manville asbestos flexboard, Phillip Carey asbestos wallboard, Johns Manville asbestos finishing felt, Flinkote plastic asphalt roofing type flashing cement, Kaylo pipe insulation, Kaylo

---

[77] *Laurent v. New Orleans City*, No. 14-2022, 2015 WL 5254723, at *2 (E.D. La. Sept. 9, 2015) (citing *Lucas v. Hopeman Bros., Inc.*, 10-1037, p. 14 (La. App. 4 Cir. 2/16/11), 60 So. 3d 690, 699–700). "To prevail [on a claim against an asbestos manufacturer, a plaintiff] must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendants' products, and that he received an injury that was substantially caused by that exposure." *Rodrigue*, 2014 WL 4999465, at *3 (quoting *Abadie v. Metro. Life Ins. Co.*, 00-344, p. 63 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 89–90) (alterations in original). "Louisiana courts . . . require the claimant in an asbestos case to show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury." *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-1198, 2015 WL 4645604, at *6 (E.D. La. Aug. 4, 2015) (citing *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 14-0141, p. 10 (La. App. 1 Cir. 12/23/14), 168 So. 3d 556, 565).

[78] R. Doc. 1-2 at 2.

[79] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). *See also U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[80] R. Doc. 15-3 (Deposition of Ralph Shepard). *See also* R. Doc. 15-1 at 9.

[81] R. Doc. 15-3 at 9, 12 (Deposition of Ralph Shepard).

block insulation, and Johns Manville asbestile cement.[82] This testimony supports the allegation that Taylor-Seidenbach was, in fact, a seller, distributor, and installer of asbestos-containing products in Louisiana around the time period during which Plaintiff alleges he was exposed to asbestos.

### 2. *Affidavits & Depositions of Dwight Corcoran & Aubert Simoneaux*

Plaintiff also attached and referred to the affidavit and deposition testimony of Dwight Corcoran in his motion to remand.[83] Corcoran stated in his affidavit that he "worked as an employee of Taylor-Seidenbach, Inc. from 1969 to 1995" at a number of work sites, including Exxon's facilities in Baton Rouge.[84] According to Corcoran, he, "along with other Taylor Seidenbach employees, worked with, supplied, and[/]or installed asbestos containing products at [those] facilities from 1969 to 1995."[85] Moreover, Corcoran stated that, "[w]hile performing this work, we were frequently in close proximity with non-Taylor Seidenbach employees who were working at the[] facilities."[86] Similarly, Plaintiff attached and referred to the deposition testimony of Aubert Simoneaux, who testified that Taylor-Seidenbach employees began working at Exxon's Baton Rouge facilities as early as the 1940s, which suggests Taylor-Seidenbach employees were working at the Exxon facilities at the same time as Plaintiff's father in the 1950s.[87]

Plaintiff offers Corcoran's affidavit and deposition testimony and Simoneaux's deposition to show that he has stated a basis of recovery under Louisiana law against Taylor-Seidenbach because its asbestos-containing products were used in Exxon's Baton

---

[82] R. Doc. 15-3 at 13–24 (Deposition of Ralph Shepard). *See also* R. Doc. 15-1 at 9.
[83] R. Docs. 15-7 (Deposition of Dwight Corcoran), 15-8 (Affidavit of Dwight Corcoran); R. Doc. 15-1 at 9.
[84] R. Doc. 15-8 at 2–3 (Affidavit of Dwight Corcoran).
[85] R. Doc. 15-8 at 3 (Affidavit of Dwight Corcoran).
[86] R. Doc. 15-8 at 3 (Affidavit of Dwight Corcoran).
[87] R. Doc. 15-9 at 5–6 (Deposition of Aubert Simoneaux).

Rouge facility during the relevant time period when Plaintiff alleges he was exposed to asbestos. Exxon attacks Plaintiff's reliance on the Corcoran and Simoneaux documents.[88] According to Exxon, Corcoran's affidavit is "little more than a self-serving document prepared during his own asbestos suit."[89] Exxon cites *Smith v. Union Carbide Corp.* in arguing that Corcoran's affidavit is insufficient to establish a reasonable basis of recovery against Taylor-Seidenbach.[90] In *Smith*, the plaintiff offered, in support of her claims against Taylor-Seidenbach, the identical affidavit executed by Dwight Corcoran and offered by the Plaintiff in this case.[91] The court noted that Corcoran's affidavit, among other evidence, suggested the plaintiff "*might*" have worked at some of the same locations as Corcoran.[92] However, according to the *Smith* court, the timing was "tenuous," as the plaintiff only could have overlapped with Corcoran for one year and, even so, the plaintiff could not establish that an overlap actually occurred.[93] It is true that in this case Plaintiff only worked for Exxon for one year—in 1971.[94] Thus, Plaintiff's overlap with Corcoran, as in *Smith*, was likely only for a negligible amount of time, but the present case is distinguishable from *Smith*, as the Plaintiff has alleged facts and pointed to other evidence showing that Taylor-Seidenbach did, in fact, supply asbestos-containing materials during Plaintiff's one-year stint with Exxon.[95] The Court finds the allegations of the state-court petition and the affidavit and deposition testimony are sufficient to show that the Plaintiff has a reasonable basis of recovery against Taylor-Seidenbach.

---

[88] R. Doc. 20 at 7.

[89] R. Doc. 20 at 7.

[90] R. Doc. 20 at 7–8. *See Smith v. Union Carbide Corp.*, No. 13-6323, 2013 WL 6244199, at *4 (E.D. La. Dec. 3, 2013).

[91] *Smith*, 2013 WL 6244199, at *4.

[92] *Id.*

[93] *Id.*

[94] R. Doc. 1-2 at 23.

[95] R. Doc. 15-1 at 9 n.2. "Plaintiff has invoices and receipts that demonstrate that between 1962 and 1973 Taylor-Seidenbach supplied asbestos-containing products and performed work at the Exxon Baton [Rouge] facilities." R. Doc. 15-1 at 9 n.2. *See also* R. Doc. 22 at 12, n.30.

B. Piercing the Pleadings

Exxon contends that, in this case, the Court should go beyond the Rule 12(b)(6)-type inquiry and "pierce the pleadings" to determine whether Taylor-Seidenbach was improperly joined.[96] Under Fifth Circuit case law, to determine the propriety of joinder, the court may, in limited circumstances, "pierce the pleadings and conduct a summary inquiry."[97] However, a summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[98] Exxon argues Plaintiff's deposition testimony establishes facts that would preclude Plaintiff's recovery.[99] During his deposition, Plaintiff was asked whether he was familiar with a company "by the name of Taylor-Seidenbach."[100] Plaintiff responded in the negative, asserting he had "no idea what they do or what it is."[101] According to Plaintiff, the company "Taylor-Seidenbach" did not "ring a bell" to him.[102] Moreover, Exxon notes that, during his deposition, Plaintiff testified to the fact that his father, through whom Plaintiff contends he was exposed to asbestos, worked for Exxon as a machinist.[103] Plaintiff testified that, at the time, he had no information to suggest his father did any "insulating work" during his employment with Exxon.[104] Plaintiff also affirmed during his deposition that he, personally, was not skilled to do insulation work during his time with Exxon but, instead, worked as a general laborer.[105]

---

[96] R. Doc. 20 at 12.
[97] *See Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).
[98] *Id. See also Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *3 (E.D. La. Apr. 5, 2013).
[99] *See* R. Doc. 20 at 15, 19.
[100] R. Doc. 20 at 19. *See also* R. Doc. 20-4 at 210–211 (Deposition of Julius David Bourke).
[101] R. Doc. 20-4 at 211 (Deposition of Julius David Bourke).
[102] R. Doc. 20-4 at 211 (Deposition of Julius David Bourke).
[103] R. Doc. 20 at 16. *See also* R. Doc. 20-4 at 177–78 (Deposition of Julius David Bourke).
[104] R. Doc. 20 at 16. *See also* R. Doc. 20-4 at 177–78 (Deposition of Julius David Bourke).
[105] R. Doc. 20 at 20–21. *See also* R. Doc. 20-4 at 189–92 (Deposition of Julius David Bourke).

Exxon argues that, based on Plaintiff's deposition testimony, there is no reasonable possibility that Plaintiff could recover from Taylor-Seidenbach.[106] According to Exxon, not only did Plaintiff fail to recognize the Taylor-Seidenbach name, Plaintiff's testimony also suggests "there is no possibility he would have been exposed to any product" of Taylor-Seidenbach, as neither Plaintiff nor his father ever worked near such products at Exxon's facility.[107] Exxon thus avers "there is little more than a tenuous possibility" that Plaintiff was exposed to asbestos-containing products manufactured or distributed by Taylor-Seidenbach, which is insufficient to establish a reasonable basis of recovery as against Taylor-Seidenbach.[108]

In *Richoux v. CSR, Limited*, a court in this district noted that a "plaintiff's deposition testimony . . . is scant evidence from which to predict that there is no reasonable basis that the plaintiff might be able to recover against the non-diverse defendants."[109] In *Richoux*, the plaintiff testified in his deposition that he had "no *personal* knowledge or information that the non-diverse defendants supplied, installed, or distributed the asbestos-containing products that he may have been exposed to during the course of his life."[110] In finding the plaintiff's deposition to be "scant evidence," the court concluded that such deposition testimony "is far from the only type of evidence, after discovery, that the plaintiff might be able to produce at trial."[111]

The *Richoux* decision is analogous to the instant case. Although Mr. Bourke could not remember the Taylor-Seidenbach name or otherwise indicate that he did insulation work during his employment with Exxon, it very well may be the case that, after discovery,

---

[106] R. Doc. 20 at 15–21.
[107] R. Doc. 20 at 21.
[108] R. Doc. 20 at 21.
[109] *Richoux v. CSR, Ltd.*, No. 08-931, 2008 WL 576242, at *4 (E.D. La. Feb. 29, 2008).
[110] *Id.*
[111] *Id.*

it becomes evident that Mr. Bourke's job duties as a general laborer required him to work *near* asbestos-containing insulation or products supplied by Taylor-Seidenbach within Exxon's facility. Moreover, discovery may uncover facts or evidence suggesting that Mr. Bourke's father, during his employment with Exxon, also worked with or near such asbestos-laden products and then exposed his son to asbestos. Because the Court is required to resolve all ambiguities in the Plaintiff's favor, the Court finds the Plaintiff's deposition testimony to be negligible evidence upon which to conclude that the Plaintiff has no reasonable basis of recovery against Taylor-Seidenbach. As a result, the Court finds that Exxon has not identified the existence of "discrete and undisputed facts" which would preclude Plaintiff's recovery against Taylor-Seidenbach.

C.  Status of Discovery

The Fifth Circuit has made clear that, in assessing allegations of improper joinder, the district court "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant."[112] For example, in *Smith v. Union Carbide Corp.*, discussed *supra*, the court based its decision to deny remand, in part, on the fact that the plaintiff had the opportunity to engage in substantial discovery, prior to the motion to remand, in an attempt to further support her claims against Taylor-Seidenbach but had failed to do so.[113] The *Smith* court stated:

> [E]ven taking all of Mrs. Smith's facts as true and applying all inferences in her favor, it does not appear reasonably possible that a state court would impose liability on Taylor. <u>This finding, combined with the fact[] that the parties are at the final stages of discovery and that Mrs. Smith has taken little action with regard to Taylor throughout the course of litigation, persuades the Court that remand is inappropriate</u>.[114]

---

[112] *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).

[113] *Smith v. Union Carbide Corp.*, No. 13-6323, 2013 WL 6244199, at *5 (E.D. La. Dec. 3, 2013).

[114] *Id.* (emphasis added).

Similarly, in another case cited by Exxon in opposition to the Plaintiff's motion to remand, the court specifically noted that discovery had been ongoing for an extensive period of time and, even so, the plaintiffs had failed to adequately develop their claims. In *Davidson v. Georgia Pacific, LLC*, a court in the Western District of Louisiana noted that, although discovery had just begun in the case before the court, eleven months of discovery had been conducted in the plaintiff's prior case, which was pending before the Eastern District but dismissed after the plaintiff's death.[115] In denying remand, the *Davidson* court relied upon, *inter alia*, the fact that extensive discovery had been completed with little development in the claims against the non-diverse defendants.[116]

To the contrary, this action was filed in state court on August 25, 2015 and removed to federal court very shortly thereafter on October 21, 2015. It is likely that very little discovery has taken place to date, other than the taking of the Plaintiff's deposition for perpetuation purposes. Due to the fact that discovery remains in its infancy, the Court finds it appropriate to remand this case to state court, where the Plaintiff will have the opportunity to further investigate and develop his claims against Taylor-Seidenbach.

## III.   ATTORNEYS' FEES & COSTS

The Plaintiff also seeks an award of attorneys' fees and costs under 28 U.S.C. § 1447(c), which provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "The decision to award fees and costs is discretionary."[117] Though discretionary, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely,

---

[115] *Davidson v. Georgia Pacific, LLC*, No. 12-1463, 2013 WL 1768015, at *3 (W.D. La. Apr. 24, 2013).
[116] *Id.* at *4–5.
[117] *Bammoo, LLC v. Nat'l Marine Underwriters, Inc.*, No. 07-5913, 2007 WL 3231547, at *1 (E.D. La. Oct. 30, 2007) (citing *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993)).

when an objectively reasonable basis exists, fees should be denied."[118] In making this determination, "[t]he court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was improper."[119]

In this case, the Court finds that an award of attorney's fees or costs under section 1447 is not justified. There is no evidence that the removing defendants lacked an objectively reasonable basis in seeking removal. Instead, the removal of this action was based on well-reasoned, though ultimately unavailing, arguments that Taylor-Seidenbach was improperly joined to defeat federal diversity jurisdiction. Under the circumstances, the Court cannot find that the removal in this case was objectively unreasonable. The undersigned exercises her discretion in not granting the Plaintiff's request for attorneys' fees and costs.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand this case to the Civil District Court for the Parish of Orleans be and hereby is **GRANTED**.

**New Orleans, Louisiana, this 4th day of March, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[118] _Martin v. Franklin Capital Corp._, 546 U.S. 132, 141 (2005).
[119] _Falcon v. Ochoa_, No. 09-665-JJB-SCR, 2009 WL 4906547, at *3 (M.D. La. Dec. 16, 2009) (citing _Martin_, 546 U.S. at 140–41; _Miranti_, 3 F.3d at 928; _Avitts v. Amoco Prod. Co._, 111 F.3d 30, 32 (5th Cir.), _cert. denied_, 522 U.S. 977 (1997)).